# CHARLESTON.

## BOGGESS *et al.* v. GOFF.

Submitted June 10, 1899—Decided November 28, 1899.

1. INTEREST—*Partial Payments.*

The holder of five notes given for the purchase of land, all dated the same day, and payable as annual installments, bearing interest from their date, and it being stated in the notes, "said interest to be paid annually," receiving partial payments thereon, without any directions from the debtor as to the application of such payments, may apply the same, first, to the payment of the interest on any or all of such notes which may be due at the time of the payment, and then to the principal of such of the notes as may be due. (p. 147).

2. INTEREST—*Compound Interest.*

But in no event, in the absence of a contract with the debtor to that effect, made after such interest becomes due, shall the holder charge interest upon such interest. (p. 147).

Appeal from Circuit Court Harrison County.

Bill by Sarah Boggess and D. W. Boggess against Mary R. Goff. Decree for complainants, and they appeal.

*Modified.*

E. G. SMITH, for appellants.

MARCELLUS M. THOMPSON, AND JOHN BASSELL, for appellee.

MCWHORTER, JUDGE:

J. W. Lynch and his wife, Agnes V., on the 27th day of October, 1879, conveyed, by deed of that date, to Sarah Boggess a tract of two hundred and thirty-five acres of land in Harrison County, in consideration of ten thousand six hundred and eighteen dollars and forty-seven cents, of which two thousand dollars was to be paid on the 1st day of December, 1879, and the residue payable in six equal annual installments of one thousand four hundred and thirty-six dollars and forty-one cents, from the said 1st day of December, 1879, and to draw interest from that day, said interest to be paid annually, and for all of which seven payments, the said Sarah Boggess made her notes under seal, also signed by D. W. Boggess, dated October 28, 1879, and retained the vendor's lien upon the land conveyed to secure the payment thereof. The first two of said notes were paid. The five remaining notes are all precisely alike, and read as follows: "One thousand four hundred and thirty-six dollars and forty-one cents. On or before the 1st day of December, 188—, for value received, I promise and bind myself, my heirs and assigns, to pay to Josiah W. Lynch the just and full sum of one thousand four hundred and thirty-six dollars and forty-one cents (one thousand four hundred and thirty-six dollars and forty-one cents), with interest from the 1st day of December, 1879, said interest to be paid annually; it being a partial payment for land bought of him. Witness my hand and seal on this 28th day of October, 1879. Sarah Boggess. [Seal.] D. W. Boggess. [Seal.] Teste: C. E. Stonestreet." The said five notes were assigned by Lynch, the payee, to Nathan Goff, and by the executor of said assignee to Mary R. Goff. Payments were made thereon by the makers of said notes from time to time, when on a final settlement on the 15th day of September, 1896, between the said D. W. Boggess, acting for his wife, Sarah Boggess and Mary R. Goff, said Boggess paid said Goff two thousand dollars, and made his note payable to said Mary R. Goff for the sum of seven hundred and nineteen dollars and eighty cents, as the balance due on account of said transaction. At the November rules, 1896, Sarah Boggess and D. W. Boggess filed their bill in the clerk's office of the circuit

court of Harrison County against said Mary R. Goff, to
which the defendant appeared and demurred; and at the
February term, 1897, of said court, plaintiffs tendered
their amended bill in open court, and the same, was
filed, and the defendant by counsel,. demurred to said
amended bill, and the same, being argued, was over-
ruled, and the defendant ordered to answer within
ten days.  The bill set up the conveyance of the land
by Lynch to Sarah Boggess;. the execution and as-
signment of the notes as stated; alleging that all of said
notes had been paid in full, including lawful interest, and
had been overpaid by plaintiffs; and alleging that pay-
ments had been made thereon from time to time, and that
defendant had applied said payments to the interest on
the several notes, and had computed interest on interest
thereon, by which means she had been largely overpaid on
each of said notes, so that at the time of the final settle-
ment, on the 15th of September, 1896, according to her
computation of the interest, plaintiffs owed defendant,·
after paying at that date two thousand dollars, the sum of
seven hundred and nineteen dollars and eighty cents, for
which amount said D. W. Boggess made his note, payable
to defendant; that plaintiffs had great confidence in de-
fendant, and relied entirely on her to keep the account and
compute the interest, and did not know that they had been
paying interest cn interest until after the said last men-
tioned note was given, and alleging that, in paying the two
thousand dollars on said date, he overpaid the balance of
the whole debt, in cash, three hundred and seventy-one
dollars and fifty-six cents, besides the said note of seven
hundred and nineteen dollars and eighty cents; that
plaintiffs were not skilled in mathematical calculations of
interest, principal, and partial payments, were not accus-
tomed to making such calculations, and were, in fact, un-
able to make them, and hence did not know they were pay-
ing compound interest until after such payments were
made; that they never ratified said payments; that they
paid the residue of three hundred and seventy-one dollars
and fifty-six cents, and gave the note aforesaid, under co-
ercion, by mistake, and involuntarily so overpaid the de-
fendant; and prayed that defendant be required to refund
·to plaintiffs the said sum of three hundred and seventy-one

dollars and fifty-six cents, and that the said note for seven hundred and nineteen dollars and eighty cents be declared usurious, fraudulent, and opposed to public policy, and that the same be canceled, and be declared null and void, and delivered up to D. W. Boggess, and for general relief.

On the 5th of February, 1897, the defendant tendered her answer, to the filing of which plaintiffs objected, but stated no ground of objection or exception to the answer. The objection was overruled, and the answer filed, to which plaintiffs replied generally, which answer admitted the transaction with Lynch, the assignment of the five notes, and avers that all payments made upon the said land, except the cash payment of two thousand dollars, which were made prior to January 4, 1896, were made either to Nathan Goff, Sr., or to his executor, and as to all payments made before respondent became the owner of said obligations by assignment, and as to all payments made thereafter to her, the payments were made, and the calculations or computations were made, with reference to the payment of interest annually, and not for the payment of money from time to time, and the application thereof according to the rules of partial payments upon debts when the interest and principle were payable at the maturity of the debt, and not payable annually, as upon the notes in question; that the payments were not made at stated or regular intervals, but just as the plaintiffs could pay or felt disposed to make payments, but the payments were always made with the distinct understanding that the interest was to be annually computed; that unpaid interest was to bear interest; denies that the payments made overpaid the notes, denies that the plaintiffs were coerced on the 15th of September, 1896, to pay the two thousand dollars, or to give the note for seven hundred and twenty dollars as a further payment; and avers that said two thousand dollars was paid, and the note for seven hundred and twenty dollars (not seven hundred and nineteen dollars and eighty cents as they state) was given, by plaintiffs voluntarily, without any constraint or coercion on the part of respondent, and with full knowledge on their part of all the facts, after statements had been sent them from time to time by respondent showing that interest was computed on the basis fixed by the obligations them-

selves and by the terms of the deed from Lynch, and the allegation that they never agreed to pay interest upon interest is untrue; denies that plaintiff D. W. Boggess was ignorant and unskillful in mathematics, so as not to comprehend the statements and calculations of interest made by respondent, or for her, and sent him; and avers that said Boggess wrote letters acknowledging receipt of such statements, and thanked respondent for her indulgence to him and his co-plaintiff in not pushing them and urging payment, etc.

The deposition of D. W. Boggess was taken on behalf of plaintiffs, who stated that he transacted all the business for his co-plaintiff, his wife, as her agent, and that she knew nothing personally about the transaction. On behalf of defendant, her own deposition and that of Lee Haymond were taken and filed in the cause.

On the 9th day of October, 1897, the cause came on to be heard; "whereupon, it appearing to the court that the first one to fall due of the notes in controversy in this cause is not entitled to consideration by the court, and it further appearing that the calculations concerning the remaining next three notes are long and tedious and somewhat involved, it is therefore adjudged, ordered, and decreed that this cause be referred to Harvey W. Harmer, a master commisioner of this court, to make a calculation of said three last-named notes, falling due on the 1st day of December, 1882, 1883, and 1884, respectively, by calculating these three notes and interest thereon according to the face of said notes, subject to the credits thereon indorsed, and that he calculate the note falling due December 1,1885, according to the annual method, without any interest on accrued interest, and to calculate any or all of said four notes, or all the notes in this cause, by any method which either party of this suit may require, and report the same to the court."

The commissioner filed his report, first showing calculation of note falling due December 1, 1882, calculating interest upon annual interest after it became due until paid, and applying payments thereon from time to time, showing a balance due on this note, November 17, 1891, of fourteen dollars and seventy-six cents. He calculated the next note, falling due December 1, 1883, in the same

way, showing its overpayment on January 23, 1894, by fourteen dollars and fifty cents. A like calculation of note falling due December 1, 1884, showed an overpayment of eighteen dollars and sixty-five cents, December 4, 1894; and on the note falling due December 1, 1885, he calculated according to the "usual method," or United States partial-payment rule, showing amount due on said note September 15, 1896, to be two thousand three hundred and twenty-three dollars and thirty-five cents; and by request of counsel for plaintiffs, he calculated the note falling due December 1, 1881, in the same manner the court directed him to calculate the three falling due in 1882, 1883, and 1884, respectively, which showed a balance due on said note on August 12, 1882, of three cents; and by request of plaintiffs, he also united into one sum the five notes falling due in 1881, 1882, 1883, 1884, and 1885, and calculated the same according to the "usual method," or United States partial payment rule, which shows a balance due defendant on the 15th of September of two thousand, four hundred and twenty-one dollars and forty-seven cents; and, by request of plaintiffs, he also calculated the notes falling due December 1, 1881, 1882, 1883 and 1884, respectively, according to the "usual method," or the United States partial-payment rule, counting each separately, which calculation showed the first note overpaid August 12, 1882, by nine dollars and forty-two cents, the next note overpaid November 17, 1891, by one hundred and twelve dollars and sixty cents, the third note overpaid July 23, 1894, two hundred and twenty-eight dollars and nine cents, and the fourth overpaid December 4, 1894, two hundred and fifty-nine dollars and forty-four cents. The commissioner then calculated the note falling due December 1, 1883, in the ordinary way of computing interest and applying partial payments, computing interest from December 1, 1879, to October 28, 1893, calling it fourteen years, ten months, and twenty-seven days, and showing an overpayment of said note, January 23, 1894, of one hundred and forty dollars and sixty cents, and a like calculation of the note falling due December 1, 1884, showing an overpayment thereof of one hundred and seventy dollars and twenty cents, and on December 4, 1894; to which report plaintiffs filed their exceptions, that the commissioner erred in his

calculations of all the notes, respectively, in that he allowed interest upon interest unlawfully, and that, in the calculation of all of said notes as a whole, said commissioner erred, in that he allowed illegal interest upon interest; and a fourth exception as to errors in time of calculating the interest on some of the notes, some of which errors are patent on the face of the report, which occurred in the calculation made on the notes separately, at the request of plaintiffs' counsel, which calculations are made according to the "usual method," or the United States partial-payment rule; and a further exception, "because said calculations, except the one note in plaintiffs' fourth exception, are made upon a wrong basis, and by the application of principles which do not obtain in this case under the law," and because said commmissioner should have reported a calculation of all and each of said notes, as required by plaintiffs, according to the rule laid down in *Hurs't Adm'r* v. *Hite*, 20 W. Va. 183. It appears also from the final decree in the cause that the defendant also excepted to said report, but such exceptions do not appear in the record. On the 31st day of January, 1898, the cause was heard, and the court overruled all the plaintiffs' exceptions to the commissioner's report, excepting the third exception, which goes to the calculation of all of said notes as whole, which exception was sustained, and overruled all exceptions of the defendant, and in all other respects confirmed the report. It was recited that it appeared from the report that the note falling due November 17, 1891, was not paid by fourteen dollars and seventy-seven cent which amounted, on the 14th of September, 1896, to eighteen dollars and ninety-seven cents; that the note falling due December 1, 1893, was over paid by fourteen dollars and fifty cents, which amounted, on September 15, 1896, to sixteen dollars and twenty-five cents; and that the note falling due December 1, 1884, was overpaid by eighteen dollars and sixty-five cents which amounted, on September 15, 1896, to twenty dollars and fifty-four cents—making the total of two overpayments thirty-six dollars and eighty-nine cents, which leaves, after deducting said unpaid balance of eighteen dollars and ninety-seven cents, an overpayment on said three notes of seventeen dollars and ninety-two cents, as of September 15, 1896; and that it further ap-

peared from said report that the note falling due December 1, 1885, amounted, on September 15, 1896, to two thousand, three hundred and twenty- three dollars and thirty-five cents, from which should be deducted the overpayment of seventeen dollars and ninety-two cents and payment of two thousand dollars, which leaves a balance as of that date due from plaintiffs to defendant of three hundred and five dollars and forty-three cents; and the same was decreed, with interest to defendant to January 31, 1898 (date of decree), making the sum of three hundred and twenty-seven dollars and fifty cents as of that date, with interest from the said 31st day of January, 1898, until paid; and it was further decreed that the note of plaintiff D. W. Boggess for seven hundred and twenty dollars, in controversy, should be canceled and delivered up by the defendant to plaintiffs on the payment of said amount decreed to defendant, and that defendant pay plaintiffs their costs of the suit. From this decree plaintiffs appealed to this court.

Appellants seem to rely very strongly upon the case of *Genin* v. *Ingersoll*, 11 W. Va. 549. The notes given in that case by Ingersoll were almost in the exact language of the notes in controversy in case at bar, annual payments running through a series of years, bearing interest from the same date, which interest was to be paid annually. The only difference, if any, is that in the *Genin-Ingersoll Case*, a mortgage was given to secure the notes, and in said mortgage there was a clause describing the notes as bearing interest "from the 2d day of February, 1854, at the rate of six per cent. per annum, payable annually; that is to say, on the 2nd day of February in each of the next seven years. The interest on all the principal then unpaid is to be paid; * * * all of which said purchase money and interest the said Josiah hereby agrees and binds himself, his heirs," etc., "to pay to the said Thomas H. Genin, or his assigns, at the respective times aforesaid." It is there held that, under the terms of the mortgage, the several notes must be regarded as one debt, on which the interest was payable annually, and the payments should first have been applied to the payment of the interest due on the whole debt, and then to the discharge of the notes in their order. The notes themselves contain a provision that the interest

thereon is payable annually.   This provision carries with
it a cause of action for the interest at the end of each year,
in case it is not paid according to the contract, "but, neg-
lecting to bring his action, he might be considered as waiv-
ing his claim to compound interest." *Hastings* v. *Wiswall,*
8 Mass. 455.  In *Bowman* v. *Duling,* 39 W. Va. 619, (20 S. E.
567) (Syl., point 1): "It is not error to decree for the pay-
ment of annual interest due on deferred installments of pur-
chase money in accordance with the contract of purchase."
The provision for the payment of interest annually in this
case is identical with the case at bar.   The holder of these
notes in the case at bar was as much entitled to have the
interest paid on them at the end of each year as to have
the principal paid when it fell due, and it was as much the
duty of the makers of the notes to pay the interest on the
notes according to their contract as to pay the principal
when it should fall due; and the holder of the notes, on re-
ceiving partial payments on account of such notes, in the
absence of directions of the debtor as to the application
thereof, would have the right to apply same either on the
principal or on overdue interest, as she chose.   *Railroad
Co.* v. *Thornburg,* 1 W. Va. 261.   But she had no right to
apply it to the overdue interest, with interest thereon
added, as she admits she did; but claims in her testimony
that, in making the settlements she made statements to
plaintiff D. W. Boggess showing clearly how the application
of the payments was made, and that he understood and
acquiesced therein.   This, however, he denies, and claims
that he did not know that he had been paying interest on
interest until after giving the final note for balance of seven
hundred and nineteen dollars and eighty cents.   "When
no appropriation has been made by either debtor or creditor
of a payment, the court will apply the same according to
the principles of justice and equity in the particular case."
*Norris* v. *Beaty,* 6 W. Va. 477.   Plaintiffs do not claim that
when they made payments on the notes they gave any
directions as to the application of such payments.   The de-
fendant undertook to apply the payments according to the
contract contained in the notes, as she construed it, which
would give her interest upon interest.   There can be no
question as to her right to have applied such payments,
first, to the overdue interest, and then to the principal of

such notes as had fallen due. And this is the application which the court should have made according to the third statement made by the commissioner, Harmer, where he makes the calculation at the request of the plaintiffs, treating all the notes as one debt, and applying the partial payments thereon.

Plaintiffs' exceptions to the commissioner's report should have been sustained, except, perhaps, the third, which related to the calculation of the five notes as a whole debt. While the report contained a small amount of interest on interest, in calculating up to three payments made, —seven hundred dollars paid July 10th, five hundred dollars paid July 26th, and four hundred and fourteen dollars and seventeen cents paid August 12th, all in 1882,—and for that reason and to that extent the report was subject to the plaintiffs' exception, yet the commissioner's calculation on the said notes, as a whole, was not to the prejudice of the plaintiffs. If he had calculated strictly according to the rule laid down in *Genin v. Ingersoll*, that "the payments made should first have been applied to the payment of the interest due on the whole debt, then to the discharge of the notes in their order," the interest on the interest which was included in the 'calculation would have been more than overcome by the calculations of interest on the overdue notes to be discharged by the partial payments. The appellee makes a cross assignment of error, in that the court adopted an improper mode of calculation, and claims that calculation as correct which the commissioner made at the instance of the plaintiffs, which was based on all the notes together. The amount ascertained by the commissioner to be due upon the 15th day of September, 1896, according to the calculation, when he groups all the notes as one debt, and applies the usual rules of partial payments, was the sum of four hundred and twenty-one. dollars and forty-seven cents, after the application of the two thousand dollars paid on that day. The court erred in the mode of calculation of interest and should have decreed to the defendant at least the said sum of four hundred and twenty-one dollars and forty-seven cents so ascertained by the commissioner as of September, 15, 1896, upon the cancellation and surrender of the note for seven

hundred and nineteen dollars and eighty cents (or seven hundred and twenty dollars).

Appellee contends that appellants are not entitled to be entertained in this court for the reason that after the decree was entered they collected and received the costs from the appellee for which they had a decree; that, having accepted the terms of the decree by receiving the costs, therefore the appeal should be dismissed; and cite *Hall* v. *Hrabrowski*, 9 Ala. 278, and *U. S.* v. *Dashiel*, 3 Wall. 688, 18 L. Ed. 268. On examination of those authorities, it is found that they cannot apply to case at bar. In the Alabama case, a plaintiff who had received a judgment below with which he was not satisfied, sued out a writ of error, seeking to reverse it, and, while the cause was pending in the appellate court, he sued out execution on his judgment, and collected the money, and, the fact not being brought to the notice of the appellate court until after its judgment had been pronounced, reversing and remanding the cause, an order was made directing that the mandate should not issue until the debt, interest, and costs below were refunded to the defendant. In this case it is conceded that the plaintiffs were entitled to relief, from the fact that a decree was entered canceling the note for seven hundred and nineteen dollars and eighty cents, and requiring its surrender, and no complaint of the decree on that account is made by appellee, and plaintiffs would be entitled to the costs of this suit in the circuit court. In the said case of *U. S.* v. *Dashiel*, plaintiff, previous to taking its writ of error, sued out execution below, and got a partial, but not a complete, satisfaction on its judgment. It was held that the writ of error would not in consequence of such execution merely, be dismissed.

For the reasons herein stated, the decree of the circuit court is reversed and set aside, and, this court proceeding to render such decree as the circuit court should have rendered, it is adjudged, ordered, and decreed that Sarah Boggess, and Harvey H. Boggess, as administrator of the estate of D. W. Boggess, deceased, out of the assets in his hands, do pay to the defendant, Mary R. Goff, the said sum of four hundred and twenty-one dollars and forty-seven cents, with interest thereon from the 15th day of September, 1896, until the 31st day of January, 1898,

amounting to four hundred and fifty-six dollars and thirty-one cents, with interest thereon from January 31, 1898, until paid, and that said defendant cancel and surrender to the plaintiffs the said note for seven hundred and nineteen dollars and eighty cents (or seven hundred and twenty dollars), and the defendant pay to plaintiffs their costs of suit in the circuit court, if not already paid; and permission is given the defendant, Mary R. Goff, to sue out execution on this decree against said Sarah Boggess and said administrator of the estate of D. W. Boggess deceased. Appellants to pay the costs of this appeal, the appellee substantially prevailing.

*Modified.*